Vogt v. Commonwealth.

CASE 14—INDICTMENT—OCTOBER 3.

# Vogt v. · Commonwealth.

### APPEAL FROM JEFFERSON CIRCUIT COURT.

To ENTITLE THE DEFENDANT IN A CRIMINAL CASE TO A CONTINUANCE on account of the absence of witnesses it must be made to appear that he has used due diligence to procure their attendance. But it is not necessary that the facts showing diligence should be stated in the affidavit; it is sufficient that a subpœna issued and placed in the hands of an officer in ample time and returned executed is exhibited to the court, or that notice of the court is called to it.

O'NEAL, PHELPS & PRYOR FOR APPELLANT.

1. The court erred in refusing the instruction asked upon the subject of threats. (Phillips v. Commonwealth, 2 Duv., 328; Carrico v. Commonwealth, 7 Bush, 124; Oder v. Commonwealth, 80 Ky., 32; Commonwealth v. Barnes, MS. Op., June 4, 1891.)
2. It was error to refuse a continuance. Where a subpœna for absent witnesses, with the return of the Sheriff thereon, is made part of the affidavit for a continuance the two should be considered together in determining whether due diligence has been used.
3. The failure to give an instruction on the subject of insanity was error.

W. J. HENDRICK, ATTORNEY GENERAL, FOR APPELLEE.

Cases cited in oral argument: Phillips v. Commonwealth, 2 Duv.; Carrico

v. Commonwealth, 7 Bush; Oder v. Commonwealth, 80 Ky.; Commonwealth v. Barnes, MS. Op.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

According to evidence of witness in this case for the Commonwealth, appellant went to the saloon and grocery of one Hackworth, and while they were drinking, Collins, the deceased, came in, and Hackworth introducing them, they took a drink together, when appellant said to deceased: " I have met you before; I met you at South Louisville at the election;" to which Collins replied, " I am a straight Democrat," when appellant said, " You didn't show it at the last election," and Collins said, " You people would not allow me to show it," to which appellant replied, " If you say I would not you are a damned liar," and then Collins, removing his left hand from appellant's shoulder, where it had been placed, and stepping back, said, " I have never taken that, and will not take it now," whereupon appellant drew a pistol and shot him, from which he died in a few seconds.  One witness states that Collins, even after the insulting language had been used, proposed taking a friendly drink and dropping the quarrel.  None of the witnesses for the Commonwealth testified to seeing a weapon of any kind in possession of Collins at the time, though some of them testified they had ample opportunity and would have seen the butcher knife exhibited on the trial if it had been in his hand or about his person after he fell to the floor.

But, according to the statement of appellant, he went to the saloon of Hackworth to serve on a man living in the neighborhood a process of court that had been put in his hands to execute, and while there inquiring for him

Collins came in and went behind the counter, but nothing then occurred between them. Appellant, after taking a drink, went out in search of the man referred to, and as he came back to the saloon Collins and others were standing outside the saloon, when, to the remark of Collins, "I am a straight Democrat," appellant replied as before said, "You didn't show it at the last election," and went into the saloon, and Collins started for him, when he was held by George Dunn and others. As soon as he got in the saloon appellant called for drinks and paid for them, and then Collins said, "I have never taken the damned lie and won't take it now." Appellant started and Collins grabbed him by the shoulder and struck him two or three times, and then Hackworth also grabbed him and told his wife to bring his pistol that he would kill the son-of-a-bitch, meaning appellant. But appellant jerked loose, and another person had pushed Collins back, who stepped back and reached up on the counter, got the knife and started for him when he fired the shot.

There was evidence of a person, who afterwards came in and helped straighten out the deceased, that he had the butcher knife grasped in his right hand, and others testified to the same effect; but that evidence was attempted by the Commonwealth to be contradicted.

Several witnesses testified to previous threats by the deceased to take the life of appellant, one of them stating he, on one occasion, at appellant's saloon, drew a pistol while his (appellant's) back was turned.

The ground for reversal which we will consider is refusal of the court to continue the case on account of four absent witnesses. The testimony of two of them would, as stated in the affidavit, be that they were present at time

of the homicide and heard Collins say he had never taken and would not then take the damned lie, and saw him take hold of defendant and strike him twice when some one pushed him back, and then he (Collins) stepped back and took a large knife from the counter and started toward appellant, who was leaving the room, and then appellant shot. He stated in his affidavit the other two absent witnesses would testify they heard Collins, on different occasions, threaten the life of appellant.

The record of testimony heard on the trial shows that several, if not all the witnesses present on the occasion, had been drinking; their statements as to whether the deceased struck appellant and whether he was armed with a knife were contradictory and irreconcilable, the preponderance being rather in favor of the theory of the prosecution. Moreover, the testimony of some of appellant's witnesses as to both the alleged threats and the possession of the knife, as well as assault by Collins, was attempted to be contradicted, and weakened. Therefore, it seems to us the evidence of the absent witnesses was extremely important and necessary to the proper defense of appellant; and it seemed to be conceded by the lower court that he would have been entitled to a continuance on that account, if diligence in procuring the attendance of the absent witnesses had been shown by the affidavit presented.

It is not stated in the affidavit that subpœnas had been in proper time issued and placed in the hands of the officer. But it appears that at the time of filing the affidavit there was returned and on file a subpœna that had been issued and actually executed on the absent witnesses, and the attention of the court was then called to it.

Diligence in procuring attendance of witnesses is a pre-requisite to continuance on application of the defendant in a criminal case, and the court is not authorized to grant it unless the fact of such previous diligence is made to appear. But it does not seem to us to make any difference whether or not it be stated in the affidavit that a subpœna was in ample time issued and placed in the hands of an officer and returned executed on the absent witness, if these facts, which constitute due diligence in meaning of the law, be made to appear to the court by exhibition of the subpœna itself and officer's return on it, or notice of the court be called to the paper then present, which appears to have been done in this case. We think appellant was, under the circumstances, entitled to a continuance, and for the error of the lower court in refusing it, judgment is reversed, and case remanded for a new trial and further proceedings consistent with this opinion.